**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**WILLIAM PAUL CRACE** **CIVIL ACTION**

**VERSUS** **NO. 12–1986**

**NORTHROP GRUMMAN SHIP SYSTEMS, INC. ET AL** **SECTION "H"(3)**

## ORDER AND REASONS

Before the Court are two Motions for Summary Judgment (Docs. 62 and 63) and a Motion to Amend the Complaint (Doc. 90). For the following reasons, one Motion for Summary Judgment (Doc. 63) is GRANTED, the other (Doc. 62) is GRANTED IN PART, and the Motion to Amend is GRANTED. Plaintiff's 33 U.S.C. § 905(b) claim, maritime negligence claim, and his state law claim related to the allegedly defective design of the ladder are DISMISSED WITH PREJUDICE. Having granted Plaintiff's Motion to Amend, Plaintiff's amended state law negligence claim related to the padlocked chain remains pending.

## BACKGROUND

Plaintiff William Crace brought this action as a result of injuries he sustained on board a ship, which was under construction by Defendant Huntington Ingalls, Inc. ("HII"). The ship is an amphibious transport dock that has since been commissioned by the United States Navy as the USS *New York*. At the time of the accident, the majority of construction activity had been completed. In fact, Plaintiff was on the *New York* as part of a final inspection process. The vessel was accepted by the Navy a few days after the accident.

Plaintiff alleges that, during the course of his inspection, he fell down a ladder in one of the ship's compartments. Plaintiff claims that the ladder was negligently designed and installed by Defendant and that Defendant negligently padlocked a chain restricting access to the hatch above the ladder. Plaintiff alleges that both acts of negligence contributed to his fall. He has asserted claims against Defendant under 33 U.S.C. § 905(b) and the general maritime law. Defendant now moves to dismiss all of Plaintiff's claims.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the

[1] Fed. R. Civ. P. 56(c) (2012).

nonmoving party."[2]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[3] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[4] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[5] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[6] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[7] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[8]

[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[3] *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528 (5th Cir. 1997).

[4] *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).

[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[6] *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

[7] *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

[8] *Boudreaux v. Banctec, Inc.*, 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

## LAW AND ANALYSIS

Defendant has filed two Motions for Summary Judgment and a Motion to Amend the Complaint. The Court will consider each in turn.

**I. Plaintiff's Maritime Claims (Doc. 63)**

In this Motion, Defendant seeks (1) dismissal of Plaintiff's 33 U.S.C. § 905(b) claim because it was not the owner *pro hac vice* of the *New York*, and (2) dismissal of Plaintiff's maritime negligence claim for lack of jurisdiction. Because the Court concludes that it lacks maritime jurisdiction over this matter, a necessary prerequisite to a 905(b) claim, it is not necessary to address Defendant's *pro hac vice* arguments.

33 U.S.C. § 905(b) permits a longshoreman injured as a result of a vessel's negligence to bring a claim directly against the vessel or its owner.[9] While 905(b) preserves a longshoreman's right to bring a negligence claim against a vessel, the Fifth Circuit has made it clear that 905(b) claims exist only within the confines of admiralty jurisdiction.[10] As a result, "to be cognizable under § 905(b), a tort must occur on or in navigable waters . . . and there must be the traditional admiralty nexus."[11] The same rule applies to maritime negligence claims.[12] Accordingly, if Court lacks jurisdiction over one of Plaintiff's claims, it lacks jurisdiction over both.

---

[9] *Chenevert v. Travelers Indem. Co.*, 746 F.3d 581, 585 (5th Cir. 2014).

[10] *Richendollar v. Diamond M Drilling Co.*, 819 F.2d 124, 125 (5th Cir. 1987) (*en banc*).

[11] *Id.*

[12] *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 351 (5th Cir. 1999).

Plaintiff's claims arise from his fall down a ladder on board the *New York*. The parties agree that the *New York* was located in navigable waters at the time of the injury. Thus, there is no question that the first element of admiralty jurisdiction is present.

The second element is a different matter. In *Executive Jet*, the Supreme Court held that a tort does not fall within admiralty jurisdiction unless there is a significant relationship between the tort and a traditional maritime activity.[13] Since *Executive Jet*, there has been some debate as to the precise contours of "traditional maritime activities."[14] It is well established, however, that shipbuilding is not a traditional maritime activity. As the Fifth Circuit has routinely observed, "a contract to build a vessel is nonmaritime in nature."[15] Furthermore, "vessels under construction give rise to neither a maritime contract nor a maritime tort."[16] Indeed, the Fifth Circuit has specifically held that "a tort arising out of work on a launched but incompleted vessel also lacks maritime flavor, despite the fact that the vessel is lying in navigable waters."[17]

Plaintiff has not plausibly argued that his claims have a significant relationship to a traditional maritime activity. To the contrary, it is abundantly clear that his claims are related to shipbuilding, a non-maritime activity.

---

[13] *Executive Jet Aviation, Inc. v. City of Cleveland, Ohio*, 409 U.S. 249, 256 (1972).

[14] *See Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 675 (1982) (rejecting the argument that "traditional maritime activity" was limited to commercial activity).

[15] *Alfred v. MV Margaret Lykes*, 398 F.2d 684, 685 (5th Cir. 1968) (citing *The Francis McDonald*, 254 U.S. 242, 244 (1920).

[16] *Cain v. Transocean Offshore USA, Inc.*, 518 F.3d 295, 301 (5th Cir. 2008).

[17] *Alfred v. MV Margaret Lykes*, 398 F.2d 684, 685 (5th Cir. 1968).

Plaintiff alleges that Defendant, a shipbuilder, negligently designed and installed a ladder, and negligently installed a padlock on a chain restricting access to the ladder. It is also undisputed that, at the time of the accident, the *New York* was not complete. Indeed, it was not accepted by the U.S. Navy until six days after the accident. Because torts arising out of work on an uncompleted vessel lack a significant relationship to a traditional maritime activity, the Court must conclude that it lacks admiralty jurisdiction over Plaintiff's claims. Accordingly, Defendant's Motion for Summary Judgment is granted and Plaintiff's 905(b) and maritime negligence claims are dismissed.

**II. Plaintiff's Motion to Amend the Complaint (Doc. 90)**

As explained above, the Court has dismissed all of the claims currently asserted by Plaintiff in this matter. Plaintiff has, however, moved to amend his complaint to assert substantially similar claims pursuant to Louisiana law. Defendant concedes that Plaintiff may bring state law claims as an alternative to his maritime claims (and has no opposition to the amendment). Accordingly, the Court grants Plaintiff's Motion to Amend. Because the Court has permitted Plaintiff to assert state law negligence claims, it is necessary to address Defendant's immunity arguments.

**II. Government Contractor Immunity (Doc. 62)**

In *Boyle v. United Technologies Corporation*, the Supreme Court established the government contractor immunity defense.[18] In *Boyle*, the family of a Marine killed in a helicopter crash sued the manufacturer of the helicopter

[18] 487 U.S. 500 (1988).

for alleged deficiencies in the design and manufacture of the helicopter.[19] The helicopter had been designed and built pursuant to a contract between the manufacturer and the United States.[20] The manufacturer asserted that it was immune from liability based on its status as a government contractor.[21] It argued that the United States itself was immune from suits arising out of injuries incurred by military personnel in the course of their military service and that the immunity enjoyed by the United States should be extended to military contractors.[22] The Supreme Court rejected this argument, finding that the immunity proposed by the manufacturer was too broad.[23] Instead, the Court found that government contractors were entitled to some immunity, but that the immunity was derived from a different source.[24]

As the Court noted, the Federal Tort Claims Act ("FTCA") permits private plaintiffs to bring suits against the United States "for harm caused by the negligent or wrongful conduct of Government employees, to the extent that a private person would be liable under the law of the place where the conduct occurred."[25] There is, however, an important exception to a plaintiff's rights under the FTCA. Specifically, a plaintiff may not bring a claim against the United States if that claim is based on the government's performance of a

[19] *Id*. at 502–03.

[20] *Id*. at 502.

[21] *Id*. at 503.

[22] *Id*. at 510.

[23] *Id*. at 510–11.

[24] *Id*. at 511.

[25] *Id*.

discretionary function.[26] Thus, where the United States exercises its discretion to choose one helicopter design over another potential alternative design, it is immune from any liability incurred as a result of that choice.[27] The Court reasoned that the government's immunity related to the exercise of its discretion should logically be extended to government contractors carrying out the government's wishes.[28] Accordingly, the Court held that:

> Liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.[29]

Defendant alleges that it is entitled to immunity based on the facts of this case. As a preliminary matter, Plaintiff argues that Defendant cannot avail itself of the defense because it has not produced the contract between it and the government. This argument is rejected. The Fifth Circuit has explicitly held that a defendant need not produce the contract between it and the government if it can otherwise establish the elements of the defense.[30]

Turning to the merits of the defense, there is no dispute that this suit is one for defects in military equipment. Plaintiff insists, however, that Defendant

---

[26] *Id.*

[27] *Id.* at 511–12.

[28] *Id.*

[29] *Id.* at 512.

[30] *Skyline Air Serv., Inc. v. G.L. Capps Co.*, 916 F.2d 977, 979 (5th Cir. 1990).

cannot meet its burden to demonstrate that it is entitled to immunity.

The crux of the dispute in this case is whether Defendant has demonstrated that the United States approved reasonably precise specifications. Defendant has provided the government's specifications regarding the ladder. These specifications provide for nearly every imaginable detail regarding the design and installation of the ladder at issue. While the documents were prepared by Defendant, they reference Navy specifications and drawings throughout. A representative of Defendant testified that the drawings were prepared by Defendant in compliance with the Navy specifications and ultimately approved by the Navy. Moreover, Defendant has offered evidence of the Navy's specification regarding the specific alleged defect.

Plaintiff claims that the ladder was defective specifically with regard to its placement. The ladder in question permits Navy personnel to travel between two compartments on the *New York*. To access the ladder, a hatch is opened in the upper compartment, revealing the ladder. The ladder is recessed 2.25 inches from the hatch opening. Plaintiff contends that this design is defective. Plaintiff argues that the ladder should have been installed flush with the hatch opening, i.e. with no recess at all. Plaintiff's preferred design is not, however, preferred by the United States Navy. The Navy's specification requires that the ladder be recessed no more than 8 inches. The ladder installed by Defendant is clearly within the Navy's specifications.

The fact that Plaintiff's proposed design is also within the Navy's specifications is of no moment. In *Stout v. Borg-Warner Corporation*, the Fifth

Circuit rejected a similar argument.[31] In *Stout*, an Army air conditioning technician sued the manufacturer of an air conditioning unit after the technician's fingers were severed while servicing the unit.[32] The technician argued that the unit should have included an internal safety device that would have prevented his fingers from contacting the fan blades.[33] The court noted that the installation of such a device would not have been inconsistent with the Army's specifications but held that the contractor was nonetheless entitled to immunity because it complied with the Army's reasonably precise specifications.[34]

The Court is also persuaded by the Third Circuit's decision in *Carley v. Wheeled Coach*.[35] In *Carley*, an emergency medical technician sued the manufacturer of an ambulance purchased by the United States.[36] She was injured when the ambulance overturned while trying to avoid an accident.[37] In the suit, she alleged that the ambulance overturned because its center of gravity was too high—a design defect she attributed to the manufacturer.[38] The evidence showed that the government specification required that the center of gravity be no more than 43 inches high and that the ambulance's actual center

[31] 933 F.2d 331 (5th Cir. 1991).

[32] *Id*. at 332.

[33] *Id*. at 334.

[34] *Id*. at 336.

[35] 991 F.2d 1117 (3d Cir. 1993).

[36] *Id*. at 1118.

[37] *Id*.

[38] *Id*. at 1126.

of gravity was 36.5 inches high.[39] The Third Circuit held that the specification created by the government was reasonably precise and that the manufacturer was entitled to immunity.[40]

This case is similar to *Carley*. The government's specifications provided that the ladder be installed within a range of acceptable recess distances. Defendant complied with that specification. Like the plaintiff in *Carley*, Plaintiff contends that Defendant should have made a different choice. Defendant's choice was, however, acceptable to the Navy. Therefore, the Court concludes that the specifications at issue were reasonably precise.

There is no dispute as to the remaining two elements of the defense. The installation of the ladder conformed to the Navy's specifications, and Plaintiff does not argue that Defendant was aware of any dangers in the ladder that were unknown to the United States, nor is there any evidence of any such dangers. Accordingly, the Court concludes that Defendant has established all three elements of the defense and that it is entitled to immunity with regard to Plaintiff's design defect claim. Plaintiff's claim that the ladder was defectively designed is, therefore, dismissed with prejudice.

Defendant's Motion does not, however, seriously address Plaintiff's second claim. Specifically, Plaintiff alleges that there was a chain restricting access to the hatch and that the chain was padlocked at the time of the accident. Plaintiff argues that he was forced to duck under the chain in order to climb down the

[39] *Id*. at 1125–26.

[40] *Id*.

ladder and that this awkward maneuver contributed to his fall.

Defendant does not argue that its immunity applies to this claim. Instead it claims that Plaintiff is mistaken and that the chain was not padlocked. The Court cannot entertain this argument on summary judgment. Because there is a genuine factual dispute regarding whether the chain was padlocked, the Court must deny Defendant's Motion as to this claim.

**CONCLUSION**

For the forgoing reasons, Defendant's Motion for Summary Judgment on the issue of maritime jurisdiction (Doc. 63) is GRANTED, Plaintiff's Motion to Amend the Complaint (Doc. 90) is GRANTED, and Defendant's Motion for Summary Judgment on the issue of government contractor immunity (Doc. 62) is GRANTED IN PART. Plaintiff's 33 U.S.C. § 905(b) claim, maritime negligence claim, and his state law claim related to the allegedly defective design of the ladder are DISMISSED WITH PREJUDICE. Having, granted Plaintiff's Motion to Amend, his amended state law negligence claim related to the padlocked chain remains pending.

New Orleans, Louisiana, this 8th day of July, 2015.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**